# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**KIM WALKER,**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-393**    (Fam. Ct. Wayne Cnty. Case No. FC-50-2023-D-7)

**JAMES WALKER,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kim Walker ("Wife") appeals the Family Court of Wayne County's August 30, 2024, amended final divorce order holding that jointly titled real property was marital property subject to equitable distribution. The issue on appeal is whether the family court erred by finding that the property was a gift to the marital estate rather than Wife's separate property. Respondent James Walker ("Husband") filed a response in support of the family court's decision.[1] Wife filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating and remanding for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in South Carolina on January 23, 2021. No children were born of the marriage. Prior to the marriage, Wife owned a home in South Carolina, and Husband owned a home in North Carolina. After marriage, Husband relocated to Wife's home in South Carolina and the parties resided there for approximately seventeen months before relocating to Wayne County, West Virginia. The parties, along with several of Wife's relatives, made repairs to Wife's South Carolina home and she received $173,693.20 from its sale. Wife deposited the same into her separate bank account.

With the assistance of a realtor, Tracey Reynolds ("Realtor"), the parties located property in Big Hurricane Creek, Wayne County, West Virginia that they were interested in purchasing. During the course of their dealings, Wife allegedly expressed to Realtor that she planned to have the property deeded solely in her name as her separate property.

---

[1] Wife is represented by Paula L. Harbour, Esq. Husband is self-represented.

However, on the closing date, July 22, 2022, Wife discovered that the attorneys who prepared the closing documents had mistakenly jointly titled the deed in both Husband's and Wife's names. Wife objected to the joint titling and Husband allegedly reassured Wife that he would never make a claim to the property. Allegedly, to prevent inconveniencing the sellers, and based on Husband's assurances that he would not claim ownership of the property, Wife signed the closing documents titling the land in both parties' names.

In November 2022, approximately four months after the closing, Husband left the marriage and relocated to his home in North Carolina. Wife filed for divorce on or about January 12, 2023. Husband filed an answer, counter-petition, interrogatories, a request for production, and a request for admissions. Wife responded to the interrogatories by stating the following about the property in Wayne County:

> [Wife] bought the land with premarital money. [Husband] was to sell his property and use the money to build a home for the parties on the property. [Husband] stated, in front of the realtor, that the Wayne County real property would be [Wife's] property until he built a house on it. That he would never take [Wife's] property. [Wife] relied on that statement when she put [Husband's] name on the deed.

Realtor provided a written statement on July 6, 2023, verifying that she remembered that the parties wanted the land titled solely in Wife's name because the payment came from the sale of Wife's property that she owned with her deceased husband. Realtor also stated that she remembered Husband saying the money was "her money" and that he was "not out to take her money."

The final hearing was held on December 1, 2023. During that hearing, Wife, Husband, Realtor, Wife's cousin, and Wife's son testified.

Wife testified that the parties agreed that she would purchase the Wayne County property and keep it in her name until Husband sold his home in North Carolina and built a home on it. Upon completion, both the land and new home would be placed in both parties' names. Wife further testified that she would not have agreed to the Wayne County property being titled in both parties' names had Husband not represented to her that he would never make a claim of ownership. Wife also testified that Husband completed minimal work on her South Carolina home, that she helped install flooring in his North Carolina home, and that neither were paid for their work. Wife further stated that Husband contributed nothing toward the purchase of the Wayne County property, and approximately four months after she purchased it, Husband researched property rights during divorce and moved back to North Carolina without selling his home as he had promised. Lastly, Wife testified that Husband led her to believe she was his third wife, but she later found out she was his fifth wife.

2

During cross-examination, Wife first stated that she knew what jointly titled property meant but later expressed confusion about the term's meaning. Regarding work completed on her South Carolina home, Wife testified that Husband helped tear down drywall from a roof leak, install laminate flooring in one bedroom, and slide new French doors into place. Wife testified that her family members also assisted with various repairs to her home and that the roof leak was professionally repaired. Lastly, she stated that she agreed to sign the jointly titled paperwork because Husband stated he would never take her property and because the sellers said it would create a hardship for them if they had to reschedule the closing.

The Realtor testified by phone that, during the closing, Wife inquired about why the paperwork included both parties' names and that Realtor heard Husband state, "it was her [Wife's] money" and "he was not out to take her [Wife's] money."

Husband testified that Wife helped install approximately five out of thirty-five cases of flooring in his North Carolina home. Regarding Wife's home in South Carolina, Husband testified that it needed significant repairs when he moved in, he paid for her electricity to be re-connected two days after their marriage, and that he purchased spray guns, paint, and a few other supplies. Regarding work completed on the South Carolina home, Husband testified that he helped repair and/or replace flooring in a bedroom, living room, and foyer, repaired a toilet, repaired a guest room ceiling, replaced French doors, removed shutters and repainted them, replaced vinyl siding, replaced a dog door, hauled off trash, and replaced lights and outlets. Husband also testified that he bought some groceries and completed approximately twenty hours per week of work on Wife's home over an approximate seventeen-month period. Upon relocating to West Virginia, Husband testified that the parties lived in Wife's uncle's home, where he installed a stove pipe, sealed the roof, and helped maintain it. Husband testified that he left the relationship due to chaos caused by Wife's family. Husband also testified that his only income was social security, he had no retirement, and that the parties planned to have everything jointly titled.

During cross-examination, Husband testified that the parties never combined their finances and that he never expected to be reimbursed for the work he completed on Wife's South Carolina home. He further stated that he did not remember stating "that's her money" and "he would not take her property" during the closing process. He testified that if he made those statements, it would be fair to say it was reasonable for Wife to rely on them. Husband further testified that the parties agreed that he would not sell his home in North Carolina. Husband further asserted that if he could put an hourly rate on the work he completed toward renovating the South Carolina home, it would be $65,000, although he had no contemporaneous time records to support his estimate.

Wife was then re-called as rebuttal witness and testified that she had to wait on insurance proceeds to repair damages to her South Carolina home. The insurance proceeds were disbursed at different times as repairs were completed. Therefore, Husband did not

3

work on the home for twenty hours per week for the full seventeen months he resided there. Rather, work was completed in phases as she received insurance proceeds.

Sherry Perry, Wife's cousin, testified that she visited Wife's home in South Carolina approximately five months after Husband moved in and the home did not appear to have undergone any remodeling. She testified that the roof, ceiling, and floors had not been repaired and Wife was still haggling with her insurance company to get insurance proceeds at that time.

Damon Humphreys, Wife's son, testified that he did most of the "grunt work" and that other family members helped remodel Wife's South Carolina home.

After the final hearing, the parties filed briefs reflecting their respective arguments. A final order of divorce was entered on January 11, 2024, with the property issue taken under advisement. The family court issued a letter to the parties on May 24, 2024, advising them that it found that Wife gifted the Wayne County property to the marriage and that she failed to prove the elements of promissory estoppel or unjust enrichment. An amended final divorce order was issued on August 30, 2024, holding that there was no evidence of fraud or duress, and that Wife gifted the property to the marriage, making it a marital asset. It is from that order that Wife now appeals.

For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Wife raises three assignments of error. However, as set forth more fully below, we hereby vacate and remand this matter for further analysis on the issues of whether Wife intended to gift the Wayne County property to the marriage as well as the equitable remedies of promissory estoppel and detrimental reliance.[2] Husband contends

---

[2] Wife's remaining assignments of error are: (1) that the family court failed to consider West Virginia Code § 48-1-237(3), which pertains to property acquired by a spouse during the marriage but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage; and (2) that the court failed to consider the equitable theories of promissory estoppel and detrimental reliance.

that Wife gifted the property to the marriage when she signed the paperwork titling the property in both parties' names, thereby converting it from separate to marital property subject to equitable distribution. Wife, in contrast, claims that she did not intend to gift the property to the marriage.

In order "to have a valid *inter vivos* gift, three requirements must be met: (1) there must be an intention on the part of the donor to make a gift; (2) there must be a delivery or transfer of the subject matter of the gift; and (3) there must be acceptance of the gift by the donee." *Brewer v. Brewer*, 175 W. Va. 750, 751-52, 338 S.E.2d 229, 231 (1985) (per curiam). "[T]o show intent at the time of the transaction in question the parties are entitled to rely on all the attendant facts and circumstances of the transaction. Thus, intent may be shown by evidence of any relevant fact and statement of the parties not barred by the hearsay rule." *Burnside v. Burnside*, 194 W. Va. 263, 272, 460 S.E.2d 264, 273 (1995).

For purposes of marital distribution, the spouse claiming that property has been gifted to him or her by the other spouse during the marriage has the burden of proving a valid gift. *See Roig v. Roig*, 178 W. Va. 781, 785, 364 S.E.2d 794, 798 (1987). W. Va. Code § 48-29-201 (2001) provides:

> The burden of proof in any proceeding questioning the validity or lawfulness of any conveyance or transfer of property or any interest in property from one spouse to the other spouse by the spouse making the conveyance or transfer, or his or her heir, devisee or creditor is on the spouse in whose favor the conveyance or transfer was made.

*See also* W. Va. Code § 48-29-202 (2001) ("in the case of an action … wherein the court is required to determine what property of the parties constitutes marital property and equitably divide the same, the presumption [of a gift] created by this section does not apply, and a gift between spouses must be affirmatively proved."); *see generally* Syl. Pt. 4, *Mayhew v. Mayhew*, 205 W. Va. 490, 519 S.E.2d 188 (1999) (holding that the party seeking to exclude property from the marital estate that is presumptively marital property has the burden of persuasion on that issue for purposes of equitable distribution).

In the case at bar, the family court failed to discuss Husband's burden of proof or cite the statutes or cases imposing said burden of proof. The final order merely included two findings of fact addressing the Wayne County property, stating "[t]here is no evidence of fraud or duress, and the transfer was a valid gift" and "[t]herefore, the property at issue is a joint marital asset."

The family court also failed to mention any of the following relevant details, among others, in its final order: (1) Wife's testimony that the property was supposed to be jointly titled upon completion of Husband selling his North Carolina home and building the parties a marital home on the Wayne County property; (2) Wife kept the proceeds from the sale of

5

her South Carolina home in a separate account; (3) the parties never combined their finances; (4) Husband led Wife to believe she was his third wife when she was his fifth wife; (5) Wife's testimony that she relied on Husband's statements that he would not claim ownership of the Wayne County property; (6) Realtor's testimony that she remembered Husband promising not to claim ownership of the Wayne County property and that Wife was reluctant to sign the paperwork jointly titling the property; and (7) Husband receives social security and has no retirement.

The family court also failed to address the credibility of either party and/or their witnesses. Husband testified that he completed approximately twenty hours per week of work over the course of seventeen months while residing at Wife's South Carolina home. Wife, in contrast, testified that insurance proceeds were disbursed to her at different times which prevented renovations from being completed consistently, and that her son and nephew assisted with renovations. Wife's cousin testified that she visited Wife's home in South Carolina approximately five months after Husband moved in and that did not appear to have undergone any renovations, as Wife was still haggling with the insurance company. Husband had no contemporaneous time records to support his testimony that he completed twenty hours of work per week, resulting in $65,000 if he had been paid at an hourly rate. Additionally, the credibility of Realtor was not addressed by the family court.

In arguing that there was a valid gift to the marriage, Husband relies solely on the jointly titled deed. However, although relevant, the existence of a jointly titled instrument is not conclusive when it comes to ownership of property between spouses. *See Richardson v. Richardson,* No. 19-0862, 2020 WL 7222720 (W. Va. Dec. 7, 2020) (memorandum decision) (affirming decision by lower court that marital residence was marital property despite husband's deed purporting to convey all his interest in the jointly owned property to wife); *Burgess v. Burgess*, 710 P.2d 417, 421 (Alaska 1985) (marital residence held to be marital property despite quitclaim deed by wife), cited with approval by *Charlton v. Charlton*, 186 W. Va. 670, 675, 413 S.E.2d 911, 916 (1991).

The fact that property was jointly titled does not necessarily mean that it was meant to be marital, rather than separate, property. *See generally Fry v. Fry*, No. 22-ICA-47, 2023 WL 1463353, at *3 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision) ("[T]itling of the property, either sole or joint, alone is not determinative of the nature of the property." . . . "Classification of the marital home as marital property or separate property is determined on a case-by-case basis . . . based on the intent and conduct of the parties.") (citations omitted); *Roig v. Roig*, 178 W. Va. 781, 785, 364 S.E.2d 794, 798 (1987) ("[W]hen real property… [is] at stake, it requires considerably more than the simple fact that property was transferred from one spouse to the other to establish a qualified… gift."); Robin J. Davis, "*Alimony and Equitable Distribution: Are the Two Concepts Commingled in West Virginia?*" 95 W. Va. L. Rev. 469, 486 (Winter 1992/1993) ("[A]ccording to the West Virginia Code, marital assets are classified as marital property or separate property based on how and when the property was acquired, as opposed to its title.").

In addition to the above-cited authority, the Supreme Court of Appeals of West Virginia ("SCAWV") explained in *Jonathan R. v. Katie R.*, No. 15-0400, 2016 WL 1735265 (W. Va. April 29, 2016) (memorandum decision),

> the intent of [the] donor ... is not unqualifiedly determined by the formalities which were carried out by the donor. Surrounding circumstances, including the conduct of the parties both prior and subsequent to the transaction in question, their testimony and the testimony of disinterested persons, the abilities and contributions of the parties, their relation to and confidence in each other, and any other factors which might throw light upon their true intent under the circumstances of the particular case must be scrutinized[.]

*Id.* at *4 quoting *Apt. v. Birmingham*, 89 F. Supp. 361 (N.D. Iowa 1950) (emphasis added).

Additionally, in *Stuck v. Stuck*, 218 W. Va. 605, 625 S.E.2d 367 (2005) (per curiam), the SCAWV recognized that the existence of a deed did not preclude the need to consider evidence concerning the donor spouse's intent. In *Stuck*, the husband executed a deed placing the marital residence, which was his separate property, in both his and his wife's names. The family court in *Stuck* held that a valid gift had been made without considering evidence concerning the husband's intent. On appeal, the SCAWV rejected the argument that the language of the deed was controlling and remanded the case for further proceedings concerning the issue of the husband's intent. *See also Poff v. Poff*, No. 23-ICA-165, 2024 WL 1092519 (W. Va. Ct. App. March 13, 2024) (memorandum decision) (remanded for further analysis on husband's intent).

When a court is tasked with determining whether property is separate or marital for equitable distribution purposes, it must make sufficient findings of fact and conclusions of law to allow effective appellate review. *See* Syl. Pt. 3, *Stuck v. Stuck*, 218 W. Va. 605, 625 S.E.2d 367 (2005) (per curiam) (absent a joint stipulation or property settlement agreement, the family court "is required to make findings of fact and conclusions of law… which reflect each step of the equitable distribution procedure."); *see generally* W. Va. Code § 48-7-106 (2001) ("In any order which… determines the ownership… of any property, … the court shall set out in detail its findings of fact and conclusions of law…").

Accordingly, we vacate and remand the August 30, 2024, final order of the family court for further proceedings consistent with this decision so that it may analyze the evidence in relation to Husband's burden of proof, provide more detailed findings of fact and conclusions of law regarding whether the three elements of intent for a gift were met, and further analysis as to promissory estoppel and detrimental reliance.[3]

---

[3] Upon remand, after analysis of the evidence and applicable law, if the family court concludes that Wife lacked the requisite intent to gift the Wayne County property to the marriage, the family court must analyze whether there was an increase in the value of either

Vacated and Remanded.

**ISSUED:**  April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

party's separate homes in North Carolina and South Carolina resulting from the expenditure of marital funds or the labor and efforts of either party. *See* W. Va. Code § 48-1-233(2) (2001); *Miller v. Miller*, 189 W. Va. 126, 129-30, 428 S.E.2d 547, 550-51 (1993) (per curiam); Syl. Pt. 2, *Shank v. Shank*, 182 W. Va. 271, 387 S.E.2d 325 (1989); *Mayhew v. Mayhew*, 205 W. Va. 490, 519 S.E.2d 188 (1999).